IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    CV 00-1536-BR

            Plaintiff,                       OPINION AND ORDER

v.

ERWIN GRANT and Real Property
located at 3368 N.E. Martin Luther
King Jr. Boulevard,      Portland, OR,

            Defendants.


JOHN ASHCROFT
United States Attorney General
THOMAS L. SANSONETTI
PAUL R. STOKSTAD
D. JUDITH KEITH
Assistant United States Attorneys General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3143


1 - OPINION AND ORDER

**KARIN IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1053

             Attorneys for Plaintiffs

**PAUL HART**
**ANGELA HART**
Hart & Hart
P.O. Box 67226
Oak Grove, OR  97268
(503) 654-1898

             Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff's Motion

for Summary Judgment (#108) and Defendant's [Cross] Motion for

Summary Judgment (#124).

     Plaintiff United States of America brings this action

under § 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607, *et

seq.*, to recover $469,312.08 for costs incurred by the

Environmental Protection Agency (EPA) when it responded to

alleged and threatened releases of hazardous substances at

certain real property in Portland, Oregon.  Plaintiff

originally brought this action *in personam* against Defendant

Erwin Grant, owner of the property, and *in rem* against the

2 - OPINION AND ORDER

real property.  During pretrial proceedings, the Court

dismissed the action against Grant without prejudice on the

basis that the Court lacked jurisdiction over him due to his

apparent incompetence.

For the reasons that follow, the Court now **DENIES**

Defendant's Motion and **GRANTS** Plaintiff's Motion.


## PROCEDURAL BACKGROUND

On November 18, 1998, Magistrate Judge John E. Jelderks

signed an Administrative Warrant for Entry, Sampling,

Inspection, and Removal Pursuant to 42 U.S.C. § 9604 in Case

No. 3:98-77-MISC-CV involving the real property owned by Grant

at 3368 N.E. Martin Luther King, Jr., Boulevard, in Portland,

Oregon.  After the EPA took certain actions at the property

and incurred various costs, Plaintiff commenced this action in

November 2000 to recover these costs from Grant and to enforce

a lien on the real property pursuant to CERCLA.

On March 6, 2001, Grant appeared at a Rule 16 scheduling

conference without counsel and in the company of his adult

son, Ken Grant.  Grant asserted numerous bases existed to

defeat Plaintiff's claims and expressed his interest in

obtaining counsel.  Grant also asked the Court's assistance in

obtaining information from Plaintiff concerning an inventory

3 - OPINION AND ORDER

of the items seized from his property pursuant to the
Administrative Warrant.  The Court directed Plaintiff to file
a report responsive to Grant's concerns, which Plaintiff filed
on April 4, 2001.

At the next status conference on April 5, 2001, Grant
again appeared without counsel and with his son, Ken Grant.
Grant reiterated his desire to retain counsel, but he also
stated he intended to proceed *pro se* if he was unsuccessful in
finding an attorney willing to take his case.  Plaintiff
indicated its readiness to file a motion for summary judgment.
The Court set case management deadlines, including a date for
Plaintiff's anticipated motion for summary judgment and for
another status conference on May 22, 2001.

At the May 2001 conference, Grant again appeared without
counsel and with his son, Ken Grant.  Grant reported he was
unable to retain counsel, and he desired to hold Plaintiff to
its burden of proof.  The Court gave Grant a general
explanation of the substantive and procedural aspects of
summary judgment practice, set a deadline for Plaintiff to
make initial disclosures to Grant pursuant to Fed. R. Civ. P.
26, and allowed Grant's request to be given additional time to
respond to Plaintiff's recently filed Motion for Summary
Judgment.  The Court also provided Grant with referral

4 - OPINION AND ORDER

information for seeking counsel through the Oregon State Bar
and information concerning settlement and mediation
procedures.  Finally, the Court set a deadline for Grant to
file an answer to Plaintiff's Complaint.

In June 2001, Attorneys Angela J. Hart and L. Paul Hart
(the Harts) filed an Answer on behalf of Grant and the Real
Property, and thereafter they filed a response to Plaintiff's
Motion for Summary Judgment.  The parties then jointly
requested a judicial settlement conference.  The Honorable Ann
Aiken, United States District Judge, held a series of
conferences with the parties beginning in August 2001 to
explore settlement.

By December 2001, it appears a question arose in the
settlement discussions concerning Grant's competency to enter
into a binding settlement agreement.  A conservatorship
proceeding was commenced thereafter in state court, and Ken
Grant was named as Conservator for Grant.  At the same time,
counsel reported to this Court that they had reached a
tentative settlement agreement that would include the entry of
a stipulated Consent Decree.  Accordingly, Plaintiff withdrew
its pending Motion for Summary Judgment.

From January through early May 2002, the parties reported
progress toward a stipulation to enter into a Consent Decree.

5 - OPINION AND ORDER

By May 2002, however, the parties' settlement discussions, conducted through Ken Grant as Conservator for Grant, broke down.

On June 21, 2002, Plaintiff filed a new Motion for Summary Judgment.  At the same time, Defendants' counsel filed a Motion to Dismiss in which they asserted for the first time before this Court that Grant was not mentally competent, did not have the capacity to defend this action, and did not have a fiduciary representative in this action.  Defendants' counsel contended, therefore, Grant should be dismissed from the action.  Defendants' counsel also asserted the action could not continue against the *in rem* Defendant Real Property in Grant's absence, and, accordingly, the Court should dismiss the action in its entirety.

In its Response to Defendants' Motion to Dismiss, Plaintiff argued the filing of a "suggestion of incompetency" notice was necessary pursuant to Fed. R. Civ. P. 25(b) to trigger the process that would require substitution of Grant's representative in this action.  Because no such pleading had been filed, Plaintiff argued no evidentiary basis existed for Plaintiff to make a motion to substitute Grant's representative.  In response, Defendants' counsel filed a Suggestion of Incompetence and a Motion to Abate Proceeding.

6 – OPINION AND ORDER

Plaintiff, in turn, filed a Motion to Substitute a Party on July 26, 2002, in which it sought an order substituting Ken Grant, as Conservator for Grant, in the place of Erwin Grant as the individual party Defendant.  The Court then issued a show cause order to Ken Grant directing him to appear and to show cause why he should not be substituted as Defendant in Grant's stead.

After a hearing at which Ken Grant appeared personally and with attorney Donald P. Roach, the Court granted in part Plaintiff's Motion to Substitute and substituted Ken Grant as Defendant solely in his representative capacity as Defendant Grant's Conservator.  The Court again set new case management dates, including a briefing schedule for Plaintiff's pending Motion for Summary Judgment.

Roach, however, filed a Motion to Withdraw as attorney of record for Conservator Grant in which he noted he had not agreed to undertake the defense of a complex environmental case and asserted the matter should continue to be defended by the Harts.  At a hearing on this Motion on November 6, 2002, it became apparent to the Court that serious questions existed as to whether the Court ever had jurisdiction over Grant in light of his apparent, longstanding incompetency.  The Court, therefore, on its own Motion, directed Plaintiff to make a

7 - OPINION AND ORDER

showing from which the Court could determine whether Grant was
properly before the Court.  The Court, nonetheless, denied
Defendants' Motion to Dismiss for lack of any evidentiary
support, but granted Defendants leave to renew their motion.

The Court conducted further proceedings concerning
Grant's competency on December 20, 2002.  Defendants' counsel
argued Plaintiff had been aware that issues existed concerning
Grant's competency beginning at least in 1999 when the United
States attempted to bring a criminal prosecution against him.
In connection with those proceedings, Grant was represented by
the Federal Public Defender, who arranged for a mental-health
evaluation of Grant.  According to Defendants' counsel in this
matter, the United States Attorney for the District of Oregon
declined to prosecute Grant based on the results of that
mental- health evaluation.

On the other hand, Plaintiff emphasized the general rule
that presumes competence at the time a complaint is served.
Plaintiff contended Defendants had not shown Grant was
incompetent at the time he was served.  In addition, Plaintiff
pointed to Grant's apparent competence in the earlier
proceedings in this action when he seemed fully oriented to
the issues.  Accordingly, Plaintiff argued the Court should be
satisfied to allow the action to proceed against both Grant's

8 - OPINION AND ORDER

Conservator and the *in rem* Defendant Real Property.

In light of the fact that Plaintiff had actual knowledge of Grant's apparent incompetence in 1999, the Court found any presumption of competence at the time Grant was served in 2000 had been overcome. In addition, the Court found the United States, because of its superior knowledge about Grant's mental status, should have taken affirmative steps early in this case to confirm Grant's competence or to name an appropriate representative. The Court also rejected Plaintiff's argument that Grant had been represented effectively when he appeared *pro se* assisted only by Ken Grant.

In addition, the Court found the record did not support a finding that Grant was competent at the time he was served. Accordingly, the Court concluded it never had jurisdiction over Grant, and, therefore, it did not have authority to grant Plaintiff's earlier Motion to Substitute a Party.

Consequently, on its own Motion, the Court ordered the action against Grant/Grant's Conservator dismissed without prejudice because of Grant's apparent incompetency at the time this action was commenced. The Court, nonetheless, did not order the dismissal of the action against the *in rem* Defendant Real Property because the Court found Grant had actual notice of the action against the property, and, in fact, took steps

9 - OPINION AND ORDER

to defend the property ultimately through the retention of the
Harts as counsel for Defendant Real Property.

At the conclusion of the December 2002 hearing, Plaintiff
withdrew its Motion for Summary Judgment in order to take into
account the Court's dismissal of Grant and his Conservator.
The Court set a final briefing schedule for an updated summary
judgment motion by Plaintiff.

On May 21, 2003, the Court heard oral argument on
Plaintiff's Motion for Summary Judgment and took that Motion
under advisement.  At the conclusion of the hearing, the Court
also set a deadline for the *in rem* Defendant Real Property to
file its Cross-Motion for Summary Judgment, which is now fully
briefed.

## **FACTS**

The Real Property that is the subject of this *in rem* action  includes a single story, L-shaped warehouse approximately 152 feet by 109 feet, including a basement, and an open outdoor garden and yard.  In November 1998, the warehouse and the outdoor area of the Real Property (the Site) were littered with fiberboard boxes and chemical containers ranging from small glass vials, jars, and cans, up to 55-gallon drums.  A number of toxic and reactive chemicals were documented on the Site, which were consistent with Grant's operation of a precious metals reclamation business.[1]

The EPA learned of the Site from local and state agency personnel.  Through the United States Attorneys' Office, the EPA sought an Order in Aid of Access, which was granted by the district court on December 15, 1998.  The Order gave the EPA permanent, uninterrupted access to the Site to conduct a removal action.  The EPA began the removal action on or about November 17, 1998, and completed it by February, 1999.

As part of the removal action, the EPA performed the following activities:

_____

[1] Although Defendant denies Grant operated a metals reclamation business, it does not cite any evidence to controvert this fact.  The Court, therefore, deems this fact admitted.  *See* Local Rule 56.1(f).

11 - OPINION AND ORDER

- categorized and removed approximately 5000 containers;

- collected 300 debris, soil, and wipe samples;

- collected 175 air samples;

- transported 230 55-gallon drums and lab packs and disposed of them off-site;

- transported 670 cubic yards of hazardous waste debris and disposed of it off-site; and

- transported 610 cubic yards of nonhazardous waste debris and disposed of it off-site.

During the removal action, the EPA and the Oregon Department of Environmental Quality collected and analyzed samples of dust from the Site.  The Site contained chemicals such as mercury, acids, and cyanide.  A sample of dust from the Site also showed high levels of lead concentration.  Soil samples from the yard  also showed high levels of lead concentration as well as contamination by other metals and chemicals.

On June 11, 1999, the EPA sent two notice letters to Grant by certified mail.  In the letters, the EPA informed Grant of the EPA's intent to perfect a lien on the Real Property and of Grant's right to notify the EPA if he believed the EPA's information was in error.  The EPA also informed Grant of his right to request an opportunity to appear before

a neutral EPA official to present any information that Grant believed would establish the EPA did not have a reasonable basis to perfect the lien on the Real Property.  By letter dated June 23, 1999, Grant responded through counsel and requested such an opportunity.  On January 14, 2000, an informal hearing was held before an EPA neutral official.  At the hearing, Grant's counsel had the opportunity to question Jeffry Rodin, the EPA's On Scene Coordinator of the cleanup at the Site, and Joseph Penwell, the EPA's Superfund Accountant, to present argument and to submit information and/or documents in support of Grant's position.

After the informal hearing, the EPA neutral official issued her Recommended Decision in which she concluded the EPA had a reasonable basis to believe the statutory elements to perfect the lien had been satisfied.  Thereafter, on March 3, 2000, the EPA perfected a lien on the Real Property for the EPA's costs incurred in connection with the Site.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material

13 - OPINION AND ORDER

fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir.

2002).  In response to a properly supported motion for summary

judgment, the nonmoving party must go beyond the pleadings and

show there is a genuine issue of material fact for trial.  *Id*.


An issue of fact is genuine "'if the evidence is such

that a reasonable jury could return a verdict for the

nonmoving party.'"  *Villiarmo v. Aloha Island Air, Inc.*, 281

F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The Court must draw

all reasonable inferences in favor of the nonmoving party.

*Id*.  A mere disagreement about a material issue of fact,

however, does not preclude summary judgment.  *Jackson v. Bank*

*of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the

nonmoving party's claims are factually implausible, that party

must come forward with more persuasive evidence than otherwise

would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d

1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense

determines whether a fact is material.  *Addisu v. Fred Meyer,*

*Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution

of a factual dispute would not affect the outcome of the

claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the ground that the lien against the real property is unenforceable by operation of the statute of limitations.  For the reasons that follow, the Court **DENIES** Defendant's Motion.


**I.    Statute of Limitations**

Under CERCLA, the United States may recover the costs of response and remedial actions from responsible parties.  42 U.S.C. § 9607(a).  In addition, CERCLA provides:

> All costs and damages for which a person is liable to the United States under subsection (a) of this section (other than the owner or operator of a vessel under paragraph (1) of subsection (a) of this section) shall constitute a lien in favor of the United States upon all real property and rights to such property which--
>
> (A) belong to such person; and
>
> (B) are subject to or affected by a removal or remedial action.

42 U.S.C. § 9607(*l*)(1).  The lien arises at the time costs are first incurred by the United States regarding a response

15 - OPINION AND ORDER

action or at the time a person is provided written notice (by certified or registered mail) of potential liability, whichever is later.  42 U.S.C. § 9607(*l*)(2).  The lien continues "until the liability for the costs (or a judgment against the person arising out of such liability) is satisfied or becomes unenforceable through operation of the statute of limitations provided in section 9613 of this title."  *Id.*

Under § 9613(g)(2), an action for recovery of costs under § 9607 must be commenced within three years after completion of the removal action.  The removal action on the Grant property was completed in February 1999, and, as noted, Plaintiff commenced this action in November 2000.  Because more than three years has passed since the removal action was completed, Defendant contends the statute of limitations has expired and Grant can no longer be held personally liable.  Moreover, Defendant contends the lien on the real property established by § 9607(*l*) is unenforceable because the statute of limitations has run as to Grant's personal liability.

Defendant, however, ignores § 9613(g)(6), which extends the statute of limitations for minors and incompetent persons.  The statute of limitations does not begin to run "against an incompetent person until the earlier of the date on which such

incompetent's incompetency ends or the date on which a legal
representative is duly appointed for such incompetent."  42
U.S.C. § 9613(g)(6).  A conservator was appointed for Erwin
Grant on December 21, 2001.  Thus, the three-year limitation
period as to Erwin Grant did not begin to run until that date
and it will not expire until December 21, 2004.  The lien
against the Grant property, therefore, remains enforceable.
In any event, as explained below, the Court also concludes
Plaintiff may maintain this action against the *in rem*
Defendant Real Property.  Accordingly, the Court denies
Defendant's Motion for Summary Judgment.

## II. *In Rem* Proceeding in the Absence of Defendant Erwin Grant

At the hearing on May 21, 2003, the Court questioned
whether the United States' *in rem* action could proceed in the
absence of Erwin Grant.  The Court invited Defendant to file a
cross-motion for summary judgment to address this apparent
constitutional issue.  Defendant, however, makes no
constitutional argument.  In fact, Defendant characterizes any
discussion regarding joinder of Grant as a "red herring."
Plaintiff, on the other hand, addresses the issue as requested
by the Court and argues Grant's presence is not a requirement
to proceed against the real property to enforce the lien.  The
Court agrees.

17 - OPINION AND ORDER

CERCLA allows the United States to recover costs that constitute a lien in an action *in rem*.  42 U.S.C. § 9607(*l*)(4).  The statute does not expressly require the property owner to be joined in an *in rem* action to enforce such a lien.  Although the Court has found no cases that directly address the issue, Plaintiff relies on *United States v. 150 Acres of Land*, 204 F.3d 698 (6th Cir. 2000).  In *150 Acres*, the government brought an *in personam* action against Glidden Corporation and an *in rem* action against real property owned by the Bohaty family.  The Bohatys were not parties to the action.  Apparently because the Bohatys undertook the defense of the *in rem* action against their real property, the court treated the owners and the real property as one and often referred to the Bohatys as defendants.  The parties did not challenge the government's right to proceed against the property without naming the owners as defendants, and the competence of the owners was not an issue.  The court in *150 Acres*, however, had no trouble analyzing the liability of the property owners, including a lengthy discussion of the owners' defenses even though the owners were not parties.  Because the Sixth Circuit proceeded to resolve the case without joinder of the owners, the case provides some support for Plaintiff's

assertion that it is unnecessary to name the property owner as
a party before proceeding with an *in rem* action.

Plaintiff also cites to legislative history that
indicates Congress intended the lien to be enforceable against
the real property when the property owner "becomes insolvent
or cannot be found." S. Rep. 99-11 (Mar. 18, 1985). Although
brief, this statement in the Senate Report provides some added
support for Plaintiff's position. In any event, the Court
finds the plain language of the statute does not require the
joinder of the owners to proceed with an action *in rem*.
Accordingly, the Court concludes this *in rem* action can
proceed without Grant as a defendant.


## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment regarding the
liability of the Real Property and seeks to recover
$469,312.08 in response costs expended to clean up the Site.
Plaintiff contends the facts that establish the *in rem*
liability and support the amount of the requested costs are
undisputed.

## I.   CERCLA Liability Requirements

Under CERCLA, whenever there is a release or a
substantial threat of release into the environment of any

19 - OPINION AND ORDER

hazardous substance, the government is authorized to take removal actions relating to the hazardous substance. 42 U.S.C. § 9604(a)(1) (Section 104). The standards for recovering response costs are set forth in 42 U.S.C. § 9607 (Section 107).

> To establish a *prima facie* case to recover its response costs under CERCLA § 107, the government has to prove: (1) the site is a "facility"; (2) a "release" or "threatened release" of a hazardous substance occurred; (3) the government incurred costs in responding to the release or threatened release; and (4) the defendant is the liable party. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152-53 (9th Cir. 1989).

*United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998) (footnote omitted).

**A.   The Grant Warehouse Site Is a "Facility."**

A "facility" is defined to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). Defendant concedes hazardous substances were stored at the Grant warehouse. Accordingly, the Court finds the Site is a "facility" within the meaning of CERCLA.

**B.   A "Release" or "Threatened Release" Occurred at the Site.**

Under CERCLA, a release is defined as:

> any spilling, leaking, pumping, pouring,

emitting, emptying, discharging, injecting,
escaping, leaching, dumping, or disposing into
the environment (including the abandonment or
discarding of barrels, containers, and other
closed receptacles containing any hazardous
substance or pollutant or contaminant).

42 U.S.C. § 9601(22).  A hazardous substance is defined as any

substance so designated by the Administrator of the EPA.

42 U.S.C. §§ 9601(14), 9602.  "Environment" includes "any . .

. surface water, ground water, drinking water supply, land

surface or subsurface strata, or ambient air within the United

States or within the jurisdiction of the United States." 42

U.S.C. § 9601(8).  The term "threatened release" is not

defined in CERCLA.  Plaintiff contends it initiated the

removal action at the Site in response to both an actual and

threatened release of hazardous substances into the

environment.

Defendant argues disputed issues of fact preclude summary

judgment as to whether there was a release or threatened

release of hazardous substances into the environment within

the meaning of CERLCA.  Defendant, however, admitted at oral

argument that leaking and deteriorating containers of

hazardous materials were present at the Site and that the dust

in the warehouse was contaminated with lead.  The Court finds

these admitted facts alone are sufficient to establish a

release and/or a threatened release under CERCLA. *See State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2$^d$ Cir. 1985)(leaking drums constituted a release and corroding and deteriorating tanks and failure to license the facility for storing hazardous wastes constituted a threat of release).

Although Defendant's argument as to the requirements for establishing liability under CERCLA is far from clear, Defendant appears to contend that CERCLA requires evidence of contamination beyond the boundaries of the Site or proof of a substantial threat of danger to the public. The cases cited by Defendant, however, do not support that contention. A removal action is authorized "[w]henever any hazardous substance is released or there is a threat of release into the environment." 42 U.S.C. § 9604(1)(A).[2] To constitute a release, a hazardous substance must be released into the environment, which includes any "land surface." 42 U.S.C. § 9601(8). CERCLA does not require the government to prove a substantial threat of danger to the public before instigating a removal action nor does CERCLA require the release to spread

_____

[2] Under CERCLA, a removal action is also authorized in response to a release or substantial threat of release of "any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604(1)(B). The government's removal action in this case, however, was based on § 9604(1)(A), which does not require proof of imminent danger to the public.

22 - OPINION AND ORDER

beyond the bounds of the facility.  *See United States v. Marisol, Inc.*, 725 F. Supp. 833, 837 (M.D. Pa. 1989)(recovery of response costs under CERCLA does not require proof of an imminent and substantial danger to the public health or welfare or to the environment).

Defendant asserts the Affidavit of Malia Rosner, prepared in support of a Motion to Quash the Administrative Warrant, creates a fact question on the issue of release.[3]  Rosner is a registered professional geologist and experienced in field investigation, risk assessment, and remediation of Superfund sites.  Rosner was hired by Grant to conduct an environmental site assessment.  Rosner visited the Site on November 5, 1998, together with two representatives of the Department of Environmental Quality (DEQ).  Rosner took dust samples at the Site, the later analysis of which showed arsenic and lead contamination that exceeded residential standards.  Rosner also noticed "a number of poorly marked drums and buckets on

---

[3] In response to Plaintiff's Concise Statement of Facts, Defendant also relies on several newspaper clippings (Def.'s Exs. 41-44).  Plaintiff objected to these exhibits in its Reply Brief on the ground that they are inadmissible hearsay. The Court finds Plaintiff's objection is well taken.  The newspaper articles cannot create a fact question because they are inadmissible hearsay.  *See Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002)("A trial court can only consider admissible evidence in ruling on a motion for summary judgment").

the site including some damaged or in an unsealed condition which pose some threat . . . ." Rosner, however, also stated the threat could be alleviated by proper labeling and closure of chemicals in secure containers. Rosner did not find any release of chemicals outside of the warehouse, but she admits a chemical spill had occurred inside of the building. Again, Rosner opined the contamination could be "readily neutralized by administering certain chemicals."

In spite of Rosner's admissions, Defendant contends Rosner's Affidavit creates a fact question as to whether an illegal release of hazardous materials occurred: "Based on my investigation of the site, there has not been any release of hazardous substances or pollutants into the environment from the Grant property that threatens the environment outside the building." The Court, however, finds Rosner's statement does not create a fact question because CERCLA does not require a release of hazardous substances to threaten the environment beyond the building. The undisputed evidence establishes hazardous substances, including lead, were released onto the land surface (*i.e.*, the "environment") at the Site, which is all that is required by CERCLA. *See* .C. § 9604(1)(A). Accordingly, the Court concludes Plaintiff is entitled to summary judgment on the issue of whether a release occurred at

the Site.

**C.    The Government Incurred Costs Responding to the Release.**

Defendant does not dispute the government incurred costs for the removal action.  Defendant, however, argues Plaintiff may not recover its costs because of its failure to comply with the National Contingency Plan, an issue the Court addresses below.

**D.    Defendant Is Within a Category of Persons Liable Under CERCLA.**

CERCLA establishes four categories of persons who may be held liable for response costs, including "(1) the owner and operator of . . . a facility, [and] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  42 U.S.C. § 9607(a)(1), (2).  Grant, as the owner and operator of the Site, falls within a category of persons liable under CERCLA.

Based on all of the above reasons, the Court finds Plaintiff has established a *prima facie* case of Defendant's liability under CERCLA, and Defendant has failed to show any disputed material facts as to the elements of its *prima facie* liability under CERCLA.

**II.  Consistency with the National Contingency Plan**

25 - OPINION AND ORDER

Plaintiff also moves for summary judgment as to the amount of its recoverable removal costs.  Plaintiff seeks to recover $469,312.08 in response costs.  Plaintiff has provided adequate documentation of these costs, and Defendant does not dispute that documentation.  Defendant, however, contends Plaintiff is barred from recovering its costs because it failed to comply with the National Contingency Plan.

**A.   The National Contingency Plan (NCP).**

CERCLA allows the government to recover all costs of a removal action "not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(A).  The NCP is a national plan the EPA promulgated to guide federal and state response actions.  42 U.S.C. § 9605.  "When the United States is seeking recovery of response costs, consistency with the NCP is presumed."  *Chapman*, 146 at 1170.  The potentially responsible party (PRP) has the burden to prove inconsistency with the NCP.  *Id.* at 1171.  To prove that a response action was inconsistent with the NCP, the PRP must prove the government's response action was arbitrary and capricious. *Id.*

Under CERCLA, a removal action is authorized whenever any hazardous substance is released or there is a substantial threat of such a release into the environment.  42 U.S.C.

26 - OPINION AND ORDER

§ 9604(a)(1)(A).  If the government determines there is "a threat to public health or welfare of the United States or the environment, the lead agency may take any appropriate removal action to abate, minimize, stabilize, mitigate, or eliminate the release or threat of release."  40 C.F.R. § 300.415(b)(1). The government must consider the following factors to determine whether such a threat exists:

> (i)  Actual or potential exposure to nearby human populations . . .;
>
> * * *
>
> (iii)  Hazardous substances or pollutants or contaminants in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release;
>
> (iv)  High levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate;
>
> * * *
>
> (vi)  Threat of fire or explosion . . . .

40 C.F.R. § 300.415(b)(2).  The Court finds Plaintiff has presented ample, undisputed evidence that these conditions existed at the Site, including evidence of leaking and deteriorating containers of chemicals, high concentrations of lead in the soil, and the potential for fire or explosion due to incompatible chemicals stored in close proximity to one another.

27 - OPINION AND ORDER

Defendant, however, argues the government's removal
action was arbitrary and capricious and thus inconsistent with
the NCP because the Site did not present a "substantial and
immediate danger to human health and the environment."
Defendant does not cite the source of this alleged
requirement, and the Court finds it to be inconsistent with
both CERCLA and the NCP.  The government is authorized to
conduct a removal action and to recover its costs for doing so
after it determines hazardous substances have been released
into the environment or there is a threat of such a release.
*See Marisol*, 725 F. Supp. at 837.  As discussed, the
undisputed evidence in this case establishes that a release
and a threat of release occurred at the Site.

In addition, Defendant contends Plaintiff should be
barred from enforcing the lien to recover its costs because
Plaintiff failed to comply with various procedural
requirements of the NCP.  Defendant maintains the EPA's
removal action was inconsistent with the NCP because the EPA
failed: 1) to prepare a removal site evaluation, 2) to allow
Grant to participate in selecting the appropriate removal
action or to consider the proposal of Grant's expert, 3) to
consider Grant's ability to perform the removal himself, 4) to
satisfy the community relations requirements of the NCP, and

28 - OPINION AND ORDER

5) to provide written notice to Grant of his potential liability.

**B.  The Removal Site Evaluation.**

Defendant does not offer any argument whatsoever to support its assertion (which appears only in a caption in its Response) that the EPA did not prepare a removal site evaluation.  The EPA's site evaluation, however, is in the record attached to the Declaration of Jeffry Rodin.

**C.  Consideration of Grant's Ability to Participate.**

Defendant contends the government's removal action is inconsistent with the NCP because the EPA did not adequately consider Grant's willingness or ability to conduct the cleanup himself and did not consider the opinion of Grant's expert when deciding on an appropriate response.  Defendant asserts "the EPA does not have the authority to refuse to consult with a PRP and to refuse to consider alternative proposals presented by the PRP."  Defendant, however, does not cite any pertinent statutory, regulatory, or other relevant authority to support this contention.

Defendant argues the EPA's failure to allow Grant more opportunity to participate in the removal action violates 40 C.F.R. § 300.410(f)(6).  That section of the NCP, however, provides only that a removal site evaluation shall be

29 - OPINION AND ORDER

terminated when the government determines "[a] party responsible for the release, or any other person, is providing appropriate response, and the on-scene monitoring by the government is not required."  Defendant has not presented any evidence to show the government should have or could have determined Grant was "appropriately responding" cleaning up the Site to the degree the EPA's involvement was not required.

40 C.F.R. § 300.415(a)(2), which is not cited by Defendant, provides:

> Where the responsible parties are known, an effort initially shall be made, to the extent practicable, to determine whether they can and will perform the necessary removal action promptly and properly.

This provision of the NCP, however, does not require the EPA to consult with Grant concerning the EPA's cleanup method or to consider, much less adopt, the limited cleanup recommendation of Grant's expert.  "Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA."  *United States v. Northeastern Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 748 (8th Cir. 1986), *cert. denied,* 484 U.S. 848 (1987).  In any event, evidence that Plaintiff may have failed to involve Grant sufficiently in the cleanup process does not render

30 - OPINION AND ORDER

Plaintiff's choice of cleanup method arbitrary and capricious.

Accordingly, the Court finds the EPA acted within its discretion when it proceeded with the removal action without Grant's assistance.

**D.   Community Relations.**

A party who conducts a removal action must satisfy certain community-relations requirements, including publication of notice of the availability of the administrative record, provision of a period for public comment, and preparation of a written response to significant comments. *See* 40 C.F.R. § 300.415(n)(2).   Plaintiff admits it did not publish the required notice of the availability of the administrative record, but it contends the other requirements are discretionary.

40 C.F.R. § 300.820(b)(2) allows the government some discretion regarding the public comment period and responses to significant comments "that were submitted prior to the public comment period."  The regulation, however, unambiguously requires the government to include in the administrative record a written response "to significant comments submitted during the public comment period."  *Id.* The government, therefore, did not comply with the community-relations requirements of the NCP.  The issue before the Court

31 - OPINION AND ORDER

is whether that failure bars the government from recovering
its response costs through enforcement of its lien.

Response costs will not be considered inconsistent with
the NCP "based on immaterial or insubstantial deviations from
the provisions of 40 CFR part 300."  40 C.F.R. §
300.700(c)(4).  Plaintiff contends its failure to publish the
required notice regarding the availability of the
administrative record is immaterial because Defendant has not
identified how the government's failure affected the EPA's
removal costs.  Neither party provides any helpful analysis or
authority on this issue.  In any event, Defendant does not
contend the EPA's failure to post the required notice
regarding the administrative record had any effect on the
ultimate cost of the cleanup.

Although the Court does not condone the EPA's failure to
comply with all of the NCP requirements, the Court finds the
EPA's omissions are an "insubstantial deviation" from those
requirements in the circumstances of this case.  Accordingly,
the Court concludes the EPA is not precluded from recovering
its response costs.

    **E.    Notice of Potential Liability.**

Defendant also argues Plaintiff cannot enforce its lien
because Plaintiff failed to provide Grant with written notice

32 - OPINION AND ORDER

of potential liability as required by 42 U.S.C.

§ 9607(*l*)(2)(B).  The record, however, contains undisputed

evidence that Plaintiff provided the required notice to Grant

by certified mail on June 11, 1999, and again on May 22, 2000.


### CONCLUSION

For these reasons, the Court **DENIES** Defendant's [Cross]

Motion for Summary Judgment (#124) and **GRANTS** Plaintiff's

Motion for Summary Judgment (#108).

IT IS SO ORDERED.

DATED this 16th day of October, 2003.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


GrantCV00-1536-O&OSJ.10-16-03.wpd


33 - OPINION AND ORDER